IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Kanzora N. Robinson, | ) | C/A No. 3:09-208-CMC-PJG |
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| John E. Potter, *Postmaster General United States Post Office*, | ) | |
| Defendant. | ) | |

Kanzora N. Robinson, an employee of the United States Postal Service, filed this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"). Robinson asserts claims of retaliation and hostile work environment.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 31.) Having reviewed the parties' submissions and the record in this case, the court finds that the defendant's motion should be granted in part and denied in part.

## BACKGROUND

The record shows the following facts that do not appear to be disputed. Robinson began working as a rural carrier at the Eastover Post Office in 1999. Since August 2000, she has served under the supervision of Venusa Gantt, who became Postmaster of the Eastover branch in

---

[1] Robinson has abandoned the claims initially asserted in her Complaint for disparate treatment, disparate discipline, and hostile work environment based upon her gender. (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., ECF No. 32 at 31.)



approximately 2002. The Eastover branch has six full-time employees and two or three part-time employees.

Robinson enjoyed a good working relationship with Gantt until late 2004 when Gantt denied a leave request of Robinson and Robinson began the process for filing an Equal Employment Opportunity ("EEO") complaint. This commenced a cycle of charges and grievances filed by Robinson and alleged retaliatory conduct by Gantt. The record further shows that a rift developed between two factions of the employees at Eastover, with Robinson, Lorraine Little, and Gilbert Morphis in one camp and Gregg Barber, John Ball, and Gantt in the other. Little and Robinson have both filed administrative charges alleging unlawful employment practices in the Eastover office. Morphis has provided statements supporting them. Among these charges are Robinson's allegations asserting that Barber and Ball created, and Gantt permitted, a hostile work environment. (See, e.g., ECF Nos. 32-16 & 32-19.) Additionally, Robinson, who serves as "shop steward" of the labor union for postal employees for the Eastover branch, has filed union grievances against Gantt. On March 12, 2008, the tension among the employees erupted into a scene that involved almost all of the employees, culminating in an incident which resulted in Gantt's placing Robinson on emergency unpaid leave. Robinson secretly made an audio recording of these events.[2] Gantt ultimately terminated Robinson. Following arbitration pursuant to the collective bargaining agreement with the postal employees' labor union, Robinson's termination was reduced to a thirteen-month unpaid disciplinary suspension.

---

[2] Secret recordings are prohibited by U.S. Postal Service policy. (U.S. Postal Service Employee and Labor Relations Manual § 667.21, ECF No. 31-14 at 3.)



## DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

*PJG*

B.  **Burden Shifting Framework**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Smith v. First Union Nat'l Bank, 202 F.3d 234, 248 (4th Cir. 2000) (applying the McDonnell Douglas burden-shifting framework in analyzing retaliation claims under Title VII). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, " 'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.' " Id.

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged"

PJG

burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.     Retaliation**

Title VII's anti-retaliation section provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, Robinson must show: (1) that she engaged in protected activity; (2) that an adverse employment action was taken against her; and

(3) that there was a causal link between the protected activity and the adverse employment action. See Lettieri v. Equant Inc., 478 F.3d 640, 650 & n.2 (4th Cir. 2007) (Title VII); Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253 (4th Cir. 1998) (Title VII); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (ADEA and Title VII). For purposes of the instant motion, only the third element is in dispute.

Little evidence of a causal connection between a protected activity and an adverse action is required to state a *prima facie* case. See Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1229 (4th Cir. 1998). However, when a plaintiff seeks to establish a causal link based on temporal proximity alone, the time period between the employer's knowledge and the adverse action must be "very close." See, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). The Fourth Circuit has indicated that a three-to-four month time lapse is too long to establish such a connection if the plaintiff is relying solely on temporal proximity. See Pascual v. Lowe's Home Centers, Inc., 193 Fed. Appx. 229 (4th Cir. 2006) (unpublished) (*per curiam*) (holding that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities and the termination of the plaintiff's employment).

In this case, the defendant argues that Robinson cannot establish a causal connection between her protected activity and her termination because the length of time between them negates any inference of causation. See, e.g., Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two."); Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001) (stating that "[a] six month lag is sufficient to negate any inference of causation"). However,

*PJG*

Robinson has presented evidence that Gantt was made aware of Robinson's 2007 administrative charge in November or December of 2007, within a few months of Gantt's suspension of Robinson in March of 2008. Moreover, even if the three-to-four month period were insufficient, Robinson does not rely solely on the temporal proximity of these events to establish the third element of causation. Rather, she has presented evidence of animus and other retaliatory conduct in the intervening period. See Lettieri, 478 F.3d at 650 ("In cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'" (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)). Here, Robinson has presented evidence that Gantt's attitude toward her changed after the filing of the EEO complaints. Cf. Farrell, 206 F.3d at 284-86; (see generally Robinson Aff., ECF No. 32-1; Morphis Aff., ECF No. 32-3; Little Aff., ECF No. 32-8). Additionally, based on the record presented, Robinson has shown that employees who did not engage in protected activity, such as Ball and Barber, were treated better than those who did, such as Robinson, Little, and Morphis. Cf. Humphries v. CBOCS West, Inc., 474 F.3d 387, 407 (7th Cir. 2007) (alleging retaliation under 42 U.S.C. § 1981); (Robinson Aff. ¶¶ 5, 9, 13, 16, 19, ECF No. 32-1 at 2-5; Morphis Dep., 34:23-35:18, ECF No. 32-6 at 4; Morphis Aff. ¶¶ 3-4, 7, ECF No. 32-3 at 3; Little Aff. ¶¶ 5-9, ECF No. 32-8 at 2-3.) For example, Robinson was disciplined for wearing inappropriate shoes when other employees who wore similar shoes were not, and she was not allowed to use her cell phone even though this restriction was not applied to other employees. (Morphis Aff. ¶¶ 7, 9, ECF No. 32-3 at 3; Robinson Aff. ¶¶ 4-5, ECF 32-1 at 3.)

Further, Robinson has presented evidence from which a reasonable jury could find that Gantt's articulated reason for terminating Robinson was untrue and was a pretext for unlawful

retaliation.  In a March 12 letter removing Robinson from duty immediately following the events of that date, Gantt stated that Robinson was "charged with improper conduct/verbally communicating a threat."  (ECF No. 32-18.)  This was apparently based on Gantt's assertion that, before leaving the premises, Robinson told Gantt that she had better "watch [her] back" and called Gantt a derogatory name.  (Id.)  Robinson has introduced testimony, however, of eyewitnesses who aver that Robinson did not make these alleged comments, and Robinson herself denies making them.  (Morphis Aff. ¶ 10, ECF No. 32-3 at 3; Robinson Aff. ¶ 22, ECF No. 32-1 at 6.)  Finally, the tape recording of the incident, while arguably made in violation of Postal Service policy, does not support Gantt's version of events.  (See generally Transcript of March 12, 2008 Tape, ECF No. 31-16;  March 12, 2008 Recording at Eastover Post Office, Def.'s Mot. Summ. J., Ex. 21 (compact disc)).  While the defendant suggests that the tape may not reflect a complete recording of the incident, Robinson has presented sufficient evidence to submit this question for determination by a jury.[3]  This is especially so in light of Robinson's evidence that Gantt had previously misstated facts when disciplining Robinson.  (See generally Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 25-26, ECF No. 32 at 25-26) (discussing evidence of a prior incident where Gantt dismissed Robinson for failing to call in when she was sick and where Gantt later acknowledged in her deposition that she did not listen to the answering machine to hear Robinson's message that she could not come in to work due to illness, even though Gantt had stated in the dismissal letter that she had reviewed the office answering

---

[3] The defendant also asserts that the arbitrator found as a matter of fact that Robinson made the threatening and disparaging remarks at issue.  Generally, an arbitration proceeding brought pursuant to a collective bargaining agreement does not preclude a subsequent civil action under Title VII and is not given preclusive effect in the civil action.  See McDonald v. City of W. Branch, 466 U.S. 284, 288-92 (1984); Alexander v. Gardner-Denver Co., 415 U.S. 36, 55-60 (1974); McNair v. United States Postal Serv., 768 F.2d 730, 736 (5th Cir.1985).  Rather, the court may accord the arbitration decision the weight it deems appropriate.  See Alexander, 415 U.S. at 59-60.

Page 8 of 13

PJG

machine and there was no message from Robinson). Accordingly, based on the record presented, a reasonable jury could find that Robinson's suspension or termination was motivated by retaliatory animus on the part of Gantt.

**D.    Hostile Work Environment**

Title VII prohibits creating or allowing a hostile work environment based on race, color, religion, sex, national origin. See Baqir v. Principi, 434 F.3d 733, 746 n.14 (4th Cir. 2006). Such an environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks & citations omitted) (Title VII). However, "[w]orkplaces are not always harmonious locales." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (Title VII). Moreover, federal employment statutes are not "general civility code[s]." Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (Title VII); Shirer v. Tri-County Elec. Co-op., Inc., C/A No. 5:07-1156-MBS, 2009 WL 2900767, *8 (D.S.C. Sept. 9, 2009) (unpublished) (Title VII & ADEA).

To make out a hostile work environment claim under federal anti-discrimination laws, a plaintiff must show that "(1) [s]he experienced unwelcome harassment; (2) the harassment was based on [her] race, color, religion, national origin, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Baqir, 434 F.3d at 745-46.

To meet the second element, a plaintiff must show that "but for" one of these protected traits, she would not have been a victim of harassment. See Causey v. Balog, 162 F.3d 795, 801 (4th Cir.

1998) (Title VII & ADEA). The federal anti-discrimination statutes do not protect employees from hostility and abuse from their supervisors unless the objectionable conditions occur because of a protected characteristic. See Graham v. Prince George's Cnty., 191 Fed. Appx. 202, 204 (4th Cir. 2006) (unpublished) (finding the district court did not err in determining that "although [the] facts reflected an unpleasant working environment, they did not support a hostile one based on an unlawful characteristic"); see also Oncale, 523 U.S. at 80; Shirer, 2009 WL 2900767 at *8.

As an initial matter, the court observes that Robinson has expressly abandoned any claim that she was subjected to a hostile work environment because of her gender. (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 31, ECF No. 32 at 31.) Nonetheless, in her memorandum opposing summary judgment she appears to be pursuing a claim that she was subjected to a hostile work environment in retaliation for engaging in protected activity. (See id. at 30-31.) It is far from clear in this circuit whether a separate hostile work environment claim can lie when it is alleged to have occurred in retaliation for protected *activity*, as opposed to being based on a *characteristic* protected under the anti-discrimination statutes such as race, color, religion, national origin, or age. Compare Wells v. Gates, 336 Fed. Appx. 378 (4th Cir. 2009) (unpublished) (stating that the second element of a retaliation claims requires a plaintiff to show that " 'the harassment was [in retaliation for protected conduct]' ") (alterations in original) (quoting Baqir, 434 F.3d at 745-46) with Baqir, 434 F.3d at 745-46 (stating that the second element requires the plaintiff to show that "the harassment was based on his race, color, religion, national origin, or age"). To the extent such a claim is cognizable under federal law, it appears that it would overlap with Robinson's retaliation claim discussed above, since it is based upon precisely the same conduct that Robinson asserts was taken in unlawful retaliation against her. (See Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 31, ECF No. 32 at 31) (discussing

*PJG*

"undeserved discipline, disparate and unfavorable treatment and a hostile and negative attitude by her supervisor" as the asserted hostile work environment). Moreover, to the extent Robinson is pursuing such a claim, it would be governed by a more stringent standard than the retaliation claim. Compare Burlington N. & Santa Fe Rwy. v. White, 548 U.S. 53 (2006) (establishing the standard for an adverse employment action in a retaliation case as conduct that would dissuade a reasonable person from engaging in protected activity) with Harris v. Forklift Sys., Inc., 510 U.S. 17 (2003) (establishing the standard for conduct in a hostile work environment case as "severe or pervasive").

In a hostile work environment case, the behavior must rise to the standard of being so "severe" or "pervasive" so as to create an abusive working environment. Harris, 510 U.S. at 21; see also Baqir, 434 F.3d at 746. When analyzing this element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance. See Harris, 510 U.S. at 23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also Sunbelt Rentals, Inc., 521 F.3d at 315-16 (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

Here, Robinson's allegations that she was subjected to undeserved discipline, disparate and unfavorable treatment, and a hostile and negative attitude by her supervisor for filing EEO complaints do not rise to the level of being so severe and pervasive as to create a hostile work environment as that term has been defined by applicable case law. Although, as discussed above,

such alleged conduct may provide evidence of unlawful retaliation, Robinson has not presented evidence of any physically threatening or humiliating abuse that would unreasonably interfere with her work performance such that a reasonable jury could find a hostile work environment in retaliation for previous EEO filings. Consequently, to the extent a claim for hostile work environment based upon retaliatory conduct exists independently of the retaliation claim itself, the defendant is entitled to summary judgment on this claim. See Harris, 510 U.S. at 21; Baqir, 434 F.3d at 746.

## RECOMMENDATION

Accordingly, the court recommends that the defendant's motion for summary judgment (ECF No. 31) be denied as to Robinson's Title VII retaliation claim but granted as to any claim of a retaliatory hostile work environment.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

November 8, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).